MARSH v. WESTERN UNION TEL. CO.

1. DAMAGES—PROXIMATE CAUSE—NONSUIT—JURY.—If from the facts relied on to show damages as resulting from a delict, more than one inference may be drawn as to whether they were or not the proximate cause of the injury, the Court cannot say as matter of law that they are too remote, but must submit it to jury.

2. IBID.—EXEMPLARY—EVIDENCE.—Where intentional wrong is alleged, it is proper to show all the facts and circumstances surrounding the transaction for consideration of the jury in awarding exemplary damages.

3. IBID.—IBID.—NEGLIGENCE—CHARGE.—When charge is considered as a whole, it will be seen to be free from the error alleged of instructing the jury that they could give exemplary damages for negligence.

4. NEGLIGENCE—WANTONNESS—JURY.—When defendant is conscious of plaintiff's rights and does an act by which the plaintiff suffers injury, and it is in doubt whether it was the result of inadvertence or intentional wrong, it must be left to the jury to determine.

5. DAMAGES—MENTAL ANGUISH—TELEGRAM.—In action for damages for failure to deliver a telegram, mental anguish, physical suffering and intentional wrong all being alleged in one cause of action, it would be error to instruct the jury to limit damages for mental anguish to the effect of the plaintiff being unable to attend the funeral, and if he attended or there was no funeral, they could give him no damages for this claim.

Before WATTS, J., Union, June, 1902.    Affirmed.

Action by Arthur Marsh against Western Union Tele-
graph Company.    From judgment for plaintiff, defendant
appeals.

Messrs. *Smythe, Lee & Frost* and *George H. Fearons,* for
appellant, cite: *Plaintiff's physical injuries are too remote:* 8
Ency., 2 ed., 561, 571, 574, 583, 584; 41 N. Y., 544; Eng.
Ent. St., sec. 113; 40 S. C., 524; 46 N. E., 358; 13 S. W.,
169; 61 S. W., 421.    *The mental anguish damages should*
*be limited to failure to attend funeral:* 33 S. C., 189; 47 S.
C., 301.    *Punitive damages were not justified by the plead-*
*ings, law or testimony:* 34 S. C., 62; 45 S. C., 392; 16 Ency.,
392; 64 S. C., 492.    *Verdict was without evidence to sup-*
*port it, and should have been set aside:* 8 Ency., 2 ed., 548,
549; 43 S. C., 1033; 60 S. W., 688; 61 S. C., 96; 60 S. W.,
688.

Messrs. *V. E. DePass* and *Stanyarne Wilson,* contra, cite:
*Physical suffering not too remote:* 54 S. C., 502; Hale on
Dam., 266; 12 L. R. A., 113, note; Con., art. IX., sec. 3;
63 S. C., 428; Code, 1902, 2223:    *Exemplary damages may*
*be recovered for negligence, where there is wantonness, &c.:*
57 S. C., 331; 62 S. C., 235.    *Allegations are sufficient to*
*warrant exemplary damages:* 62 S. C., 235.

March 27, 1903.    The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY.    *Statement of facts.*—This is an
action for damages, alleged to have been sustained by the
plaintiff through the negligence and wantonness of the de-
fendant in failing to deliver a telegram.    The allegations of
the complaint necessary to a full understanding of the ques-
tions at issue, are as follows:

"III. That on February 24th, 1901, plaintiff was, and has
been for some time, living at Union, S. C.; and his mother,

Mrs. Mollie Marsh, was at Gaffney, S. C. That on said day, in the forenoon, the said Mrs. Mollie Marsh, the mother of the plaintiff, delivered to the agent of the defendant at Gaffney, S. C., for transmission and delivery by the defendant to the plaintiff, at Union aforesaid, a certain telegraph message addressed to plaintiff, in the following words: 'Your father died this morning, come to-day' * * *

"IV. That said message was received by defendant company through its operator at Union, S. C., on the same day at 9 o'clock A. M., and the same could easily have been delivered to plaintiff within a very short time in that forenoon; but defendant made no effort or attempt to deliver the same to plaintiff, and by and through its (gross and wanton) inattention, carelessness and negligence, permitted it to remain undelivered till the afternoon of February 25th, 1901.

"V. That if said message had been delivered to plaintiff promptly, or with reasonable dispatch, by defendant, as it was its duty to do, the plaintiff would have received the same in due time to have attended his father's funeral, which consolation said delay deprived him of.

"VI. That upon the delayed receipt of the message by him as aforesaid, it was impossible to reach Gaffney that day by rail, February 25th, 1901, by reason of all trains going north then having left Union for that day; and in consequence thereof, he had to go to the expense of hiring a horse and endure the fatigue, suffering and exposure of riding it to Gaffney from Union, a distance of twenty miles, on a very cold day, by which ride and exposure he contracted grippe and rheumatism, from which he is still suffering, to his great damage.

"VII. That by reason of the aforesaid (gross) negligence of defendant, plaintiff was prevented from reaching Gaffney in time to attend his father's funeral, to his great mental pain, distress and anguish.

"VIII. That by the aforesaid (gross and wanton) carelessness and negligence of defendant, plaintiff was damaged in the sum of $1,999."

The jury rendered a verdict in favor of the plaintiff for $500. The defendant appealed upon the following exceptions:

"First. Because his Honor erred in allowing the plaintiff, against the objection of the defendant, to answer the following question: 'What effect did you have following from the cold weather?' and to testify as to cold and rheumatism or other sickness contracted during his ride from Union, S. C., to Elbethel Churchyard; it being respectfully submitted that such damages were not the natural, proximate or direct result of the failure to deliver the message mentioned in the complaint, and could not have been in contemplation of the parties at the time the message was presented to the defendant for transmission.

"Second. Because his Honor erred in charging the jury as follows: 'Now, if there was any negligence on the part of the defendant company in failing to deliver this telegram, and if, by reason of that, the plaintiff missed the train going to Gaffney and had to hire a turnout and ride across the country, and he caught a cold or rheumatism, or got sick, or anything of that sort, from that ride, and the direct and proximate cause of his sickness was exposure, if he was exposed, and his sickness, if he did get sick, and that was directly traceable and attributable to the negligence of the telegraph company, if they were negligent, if that was the direct and proximate cause of his sickness, then he would be entitled to recover such damages as the jury think he is entitled to under the evidence in the case.' It being respectfully submitted that such damages were not the natural, proximate or direct result of the failure to deliver the said message, and the complaint contained no allegation to the effect that they were in contemplation of the parties, when the defendant accepted the message for transmission; and, therefore, the jury should have been instructed that rheumatism or sickness resulting from the ride to the graveyard could not be regarded in assessing damages.

"Third. Because his Honor erred in charging the jury as

28—65

follows: 'Now, gentlemen, as to damages in the way of punishment. If you are satisfied that the telegraph company was negligent, and their negligence was the cause of plaintiff's suffering, negligent in failing to deliver that telegram within a reasonable time, if they did fail to deliver it within a reasonable time; then if you think that that was a wanton, intentional, wilful and high-handed invasion of the plaintiff's rights, then you can give, in addition to such actual damages as you think he has sustained, you can give him examplary or punitive damages, or damages in the way of smart money, to punish them for that act, if the act was intentional, wanton and outrageous, and a high-handed invasion of plaintiff's rights.' It is respectfully submitted that his Honor erred herein in the following respect: 1. In charging that if the jury found the defendant guilty of negligence, then the jury could give examplary damages; whereas, it is the law of this State that when the default is due to negligence or even to gross negligence, examplary damages are not recoverable. 2. In misleading the jury by the language used, and giving the jury reason to believe that the distinction between negligence and such a frame of mind as is essential to exist to justify a recovery of examplary damages, is not one of kind, but merely of degree; whereas, it is submitted that the two mental conditions differ in kind and represent opposite states of mind. 3. In charging the jury it could award examplary damages under any circumstances, for it is respectfully submitted there was not a *scintilla* of evidence showing the mental condition on the part of the defendant, which must exist, to warrant the award of such damages.

"Fourth. Because his Honor refused to charge the second request of the defendant, to wit: 'That the jury must limit the damages from mental anguish, if they find any, to the effect of the plaintiff being unable to attend his father's funeral; and if they find there was no funeral, or that the plaintiff attended the funeral, then they cannot find any damages against the defendant for this mental anguish

claim.' For the reason that the only mental anguish which plaintiff alleges to have suffered was that caused by his failure to attend his father's funeral; and the plaintiff should be confined in his recovery to the damages alleged in the complaint.

"Fifth. Because his Honor refused to charge the sixth request of the defendant, to wit: 'That if the jury find that the physical injury and suffering set out in paragraph six of the complaint, was not in contemplation of the parties at the time of sending the message, and that the defendant company had then no cause to think or to contemplate the fact that the plaintiff would (on receiving the message) ride across the country and become injured in a snow storm and become sick, and that such facts and causes are too remote, or beyond the control of the defendant; then they cannot allow any damages for these alleged physical injuries set out in paragraph six;' whereas, it is submitted that the said request is in accord with established law. It being respectfully submitted that a person is liable only for the direct, proximate and natural results of his breach of contract or wrongful act, and only for such as reasonably may be assumed to have been in contemplation of the parties at the time the contract was entered into or the wrongful act committed.

"Sixth. Because his Honor refused to charge the eleventh request of the defendant, to wit: 'That under the allegations of the complaint in the cause only actual damages can be recovered, and the jury cannot include in its verdict any damages with a view to punishing the defendant.' It being respectfully submitted that the complaint does not allege the existence of a mental condition on the part of the defendant or its agents which must exist to warrant a verdict having in view the punishment of the defendant.

"Seventh. Because his Honor refused the motion of the defendant for a new trial; whereas, it is submitted that his Honor should have granted said motion upon the grounds on which it was made, and especially should have held: 1.

That he erred in refusing to charge the second request of the defendant. 2. That he erred in refusing to charge the sixth request of the defendant. 3. That he erred in refusing to charge the eleventh request of the defendant. 4. That he erred in not charging the jury that they could not award punitive damages."

*Opinion.*—We will follow the arrangement of the appellant's attorneys in grouping exceptions numbered I., II. and V., and consider them together. Under the exceptions, the appellant contends, "that the damages which are set out in paragraph VI. of the complaint are too remote from the delict of the defendant, to be termed proximate damages, and, therefore, evidence of them should not have been admitted." The general principles as to the doctrine of causal connection between events producing injury, are considered in cases so recently decided, that we deem it only necessary to refer to them, among which may be mentioned: *Mack* v. *R. R.,* 52 S. C., 323, 29 S. E., 905; *Pickens* v. *R. R.,* 54 S. C., 498, 32 S. E., 567; *Young* v. *W. U. T. Co.,* 65 S. C. If the facts are susceptible of more than one inference the Court cannot say, as matter of law, that the damages are too remote, but must submit them to the jury for its determination. In this case, when the defendant failed to deliver the telegram in time for the plaintiff to board the train, it was but reasonable to suppose that he would resort to other means of conveyance for the purpose of attending the funeral of his dead father; and it was for the jury to decide whether the injuries which he sustained in so traveling were the direct and proximate result of the defendant's failure to deliver the telegram in proper time.

There is another reason why the testimony was competent, even if it appeared that the injuries sustained by the plaintiff were only remotely caused by the negligence of the defendant. In *Gillman* v. *R. R.,* 53 S. C., 210, 31 S. E., 224, the Court says: "The third ground complains of error in allowing the plaintiff to testify as to what he did after he got back to Richmond. This, it seems to us,

was harmless error, if error at all.   At most, its only effect
would be to aggravate—*not* the damages which plaintiff
sustained, but the damages which defendant should pay, by
reason of the misconduct of its servants, as a punishment for
their wilful or wanton default; and in that view, it would be
competent."   This ruling was approved in *Young* v. *W. U.
T. Co.,* 65 S. C.      In *Pickens* v. *R. R.,* 54 S. C.. 498, the
rule is thus stated: "The exemplary damages are in addition
to the compensatory damages.   *Duckett* v. *Pool,* 34 S. C.,
311.   There are cases which decide that when the wrongful
act was wilful, the plaintiff can recover for consequences of
which the original wrongful act of the defendant was only a
remote cause, but this is not sound in principle.   The correct
rule is that when the plaintiff is entitled to damages. arising
from the defendant's intentional wrong, the jury has the
right to take into consideration those causes even remotely
contributing to the injury, not for the purpose of giving
damages for the injury thus caused, but that they may have
in view all the facts and circumstances in awarding the ex-
emplary damages."   The complaint in this action alleges
both negligence and wantonness as elements of damage.
The testimony was, therefore, admissible under the allega-
tions of the complaint that the defendant was guilty of inten-
tional wrong.   These exceptions are overruled.

We proceed to consider the third exception.   The first
particular in which it is contended his Honor erred is: "In
charging that if the jury found the defendant guilty of negli-
gence, then the jury could give exemplary damages;
whereas, it is the law of this State, that when the
default is due to negligence or even to gross negli-
gence, exemplary damages are not recoverable."   There is
no doubt that the appellant states correctly the law in this
State, that when the default is due to negligence or even
gross negligence, exemplary damages are not recoverable.
Exemplary damages are only recoverable for *intentional*
wrong.   The defendant's fourth request was as follows:
"That even if negligent, the defendant is liable only for the

direct and approximate damages resulting from its negligence, and only for such damages as may fairly be supposed to have been in contemplation by the parties at the time of delivery of the message to the defendant's agent at Gaffney." This was charged. This principle is also stated in his general charge. When the charge is considered in its entirety, it will be seen that it is free from the error assigned in this particular. The second particular mentioned in this exception is disposed of by what has just been said.

The third particular assigning error is: "In charging the jury it could award exemplary damages under any circumstances; for, it is respectfully submitted, that there was not a *scintilla* of evidence showing the mental condition on the part of the defendant which must exist, to warrant the award of such damages." In *Meyers* v. *R. R.,* 64 S. C., the Court says: "It was fairly left to the jury in other portions of the charge to determine whether defendant's agent was merely negligent in his conduct, or whether he was acting wilfully or wantonly. If defendant's agent, conscious of plaintiff's right as passenger, nevertheless invaded the right by exacting and coercing an unlawful payment of money under threat of expulsion from the train, his conduct was wilful or wanton, such as would subject defendant to exemplary damages." In the case under consideration, his Honor fairly left it to the jury to determine whether defendant's agent was merely negligent in his failure to deliver the telegram, or whether he acted wilfully and wantonly. There is no doubt the defendant's agent was conscious of the plaintiff's rights. It is generally very difficult to tell whether an act is the result of negligence, which is founded upon inadvertence or wantonness, which presupposes intentional wrong. *Griffin* v. *R. R.,* 65 S. C., When the defendant is conscious of the plaintiff's rights, and does an act by which the plaintiff suffers injury, it must be left to the jury to determine whether it was the result of inadvertence or intentional wrong, if the question is in doubt. In

this case his Honor properly submitted the question to the jury.

We will next consider the fourth exception. The act of 1901, page 748, is as follows:

"Sec. 1. That from and after the passage of this act, all telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering even in the absence of bodily injury, for negligence in receiving, transmitting or delivering messages.

"Sec. 2. That nothing contained in this act shall abridge the rights or remedies now provided by law against telegraph companies, and the rights and remedies provided for by this act shall be in addition to those now existing.

"Sec. 3. That in all actions under this act the jury may award such damages as they conclude resulted from negligence of said telegraph companies."

Under section 1 of this act the telegraph company is liable in damages for mental anguish and suffering, even in the absence of bodily injury, for negligence in receiving, transmitting or delivering messages, and even if it could be successfully contended that the plaintiff is not also entitled under section 3 to recover for physical injury, directly and proximately caused by the negligence of the defendant, he has such right independently of the statute. *Mack* v. *R. R.,* 52 S. C., 323. The plaintiff likewise has the right independently of the statute to recover for intentional wrong on the part of the defendant. *Lewis* v. *Tel. Co.,* 57 S. C., 325, 35 S. E., 556; *Butler* v. *Tel. Co.,* 62 S. C., 223, 40 S. E., 162. All these acts of negligence or other wrong are set out in the complaint. The act of 1898, page 693, gave the plaintiff this right. The request to charge was, at least, misleading; for even if there was no funeral or the plaintiff attended the funeral, this would not exempt the defendant from liability for physical injuries sustained through the negligence of the defendant in delivering the message. This exception is overruled.

Exceptions numbered 6 and 7 are disposed of by what was said in considering the other exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.