## 7725

### MONTGOMERY v. SOUTHERN POWER CO.

1. PLEADINGS AND PROOF.—Where the allegation is of a trespass beyond a right of way limited to eighty feet and the evidence is of a trespass in excess of what was reasonably necessary for defendant's use, there was not a fatal variance between the allegations and the proof.

2. DAMAGES—PLEADINGS—TIMBER.—No allegation of negligence is necessary to sustain an action for compensatory damages for cutting timber without consent of the owner.

3. PUNITIVE DAMAGES—MASTER AND SERVANT.—Evidence tending to show an agent of a power company put a number of hands to cutting out a right of way through woodland, that they cut it too wide in some places, that the agent while they so cut visited them for several weeks to pay them, that they continued to so cut after

objection made to them, but when his attention was called to it he caused them to desist, will support punitive damages.
*Divided Court.*

4. EVIDENCE—OPINION—TIMBER.—Estimates of practical men of affairs are admissible in ascertaining the number of trees unnecessarily cut in opening a right of way, but its exclusion here harmless as there was other evidence to same effect.
*Divided Court.*

5. REHEARING refused.

Before ERNEST MOORE, Special Judge, October term, 1909. Affirmed.

Action by Mary A. Montgomery against Southern Power Co. From judgment for plaintiff, defendant appeals.

*Messrs. Osborne, Lucas & Cocke* and *John T. Green,* for appellant. *Mr. Green* cites: *What is an expert:* 7 Ency., 491; 59 S. C., 318; 67 S. C., 181; 62 S. C., 292; 72 S. C., 259. *Collateral attack on deed:* 63 S. C., 418; 69 S C., 93; 27 S. C., 380; 24 S. C., 128; 77 S. C., 191; 82 S. C., 450; 49 S. C., 414. *Estimating timber:* 7 Ency., 492, 496; 57 S. C., 445; 61 S. C., 329; 308. *No punitive damages for entry under deed:* 70 S. C., 528; 71 S. C., 153. *On allegation of:* 78 S. C., 419; 61 S. C., 186; 64 S. C., 491. *Nonsuit should be granted upon proof differing substantially from allegations:* 16 Ency., 745; 31 Cyc., 701; 711; 2 McC., 396; 21 S. C., 221; 33 S. C., 477; 72 S. C., 474; 3 S. C., 401.

*Mr. J. Harry Foster,* contra, cites: *Exclusion of evidence after admission of same kind is harmless:* 72 S. C., 425; 75 S. C., 266; 57 S. C., 69; 60 S. C., 19; 41 S. C., 420; 36 S. C., 373; 53 S. C., 451; 69 S. C., 165; 40 S. C., 93; Elliott on Ev., sec. 246; 100 Am. D., 628. *Punitive damages:* 60 S. C., 56; 62 S. C., 330; 65 S. C., 1, 127; 69 S. C., 116. *Nonsuit properly refused:* 5 Rich., 546; 1 Hill,

382; 75 S. C., 409; 59 S. C., 162; 57 S. C., 429; 61 S. C., 468; 63 S. C., 376; 70 S. C., 250; 21 S. C., 93; 65 S. C., 1; 60 S. C., 73; 65 S. C., 127; 69 S. C., 132; 84 S. C., 102. *Witness could not state amount of timber unnecessarily cut:* McKenzie on Ev., 172; Elliott on Ev., 674; 79 S. C., 154; 37 S. C., 417; 43 S. C., 126; 12 Ency., 421; 74 S. C., 102; 63 S. C., 572; 38 S. C., 213; 19 S. C., 68; 36 S. C., 485.

The opinion in this case was filed October 4th, but held up on petition for rehearing until .

November 29, 1910.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The plaintiff by her deed of conveyance granted to the defendant an easement, "to go in and upon that tract of land situated in said county and State, bounded by lands of W. K. Plyler, Dr. W. M. Crawford estate (et al.), and to construct and maintain in, upon, and through said premises in a proper manner with poles, towers, wires and other necessary apparatus and appliances, a line for the purpose of transmitting power by electricity, together with the right at all times, to enter upon said premises for the purpose of inspecting said lines and making necessary repairs and alterations thereon, together with the right to cut away and keep clear of said lines all trees and other like obstructions that may, in any way, endanger the proper operation of the same."   As the consideration, the defendant by the same deed agreed to pay two hundred and fifty dollars and "to cut and cord all timber except such trees as may be selected by Mary A. Montgomery for milling purposes, those to be cut into lengths named by owner."

This paper meant that the defendant should have a right of way over the land to the extent reasonably necessary to the construction and operation of its line to be used in transmission of power by electricity.   The defendant entered upon the land and cut out a way for its line.   Thereupon the plaintiff brought this action for damages, alleging that

the defendant had agreed that the width of the right of way should be limited to eighty feet; that the failure to express this agreement in the conveyance was due to the fraud and misrepresentation of the defendant as to the purport of the paper; that the defendant in a reckless, wanton and wilful manner had cut through the plaintiff's woods an opening varying in width from fifty to one hundred feet beyond the eighty feet right of way which the plaintiff had agreed to convey. The defendant by its answer set up the deed of conveyance of the right of way above recited, denying that it had been procured by fraud or misrepresentation, and alleged that no injury had been done to the land beyond that authorized by the grant from the plaintiff. The defendant appeals from a judgment of five hundred dollars in favor of the plaintiff.

The exception assigning error in the admission of evidence of a parol agreement at variance with the written agreement of the right of way was taken under a misapprehension, for the Court held the plaintiff bound by the written contract and, whenever objection was made, either excluded or struck out all testimony offered for the purpose of showing that the right of way was to be limited to eighty feet.

The position was taken on the motion for nonsuit that there was a fatal variance between the allegations of the complaint and the evidence, in that the allegation was of a trespass beyond a right of way limited to eighty feet, and the evidence offered by the plaintiff was of a trespass by the cutting of timber in excess of what was reasonably necessary for the construction and maintenance of defendant's line for the transmission of power by electricity. The position is not well taken. That which gave character to the action was the allegation in the complaint of defendant's trespass on the land of the plaintiff by cutting more of the timber than was authorized by the contract. The difference between the pleadings and the proof

as to the extent of the cutting which was authorized by the contract was a mere detail, having no effect except to reduce the damage recoverable. The variance was not such as to change materially the issue presented by the pleadings or to subject the defendant to surprise or other disadvantage.

The defendant further contended on the motion for nonsuit that the plaintiff could not in this action recover actual damages without proof of wilfulness or wantonness, because there was no allegation of negligently cutting trees beyond the right of way granted. The unsoundness of this position is made evident by observing that the complaint would have stated a cause of action if it had contained no charge either of negligence or wilfulness or wantonness, and merely alleged that the defendant had cut the plaintiff's timber beyond the right of way granted. Obviously no degree of care could save the defendant from liability for the value of any of plaintiff's timber cut without her consent. No allegation of negligence therefore was essential to the recovery of compensatory damages. *Baldwin* v. *Postal Co.,* 78 S. C., 419, 59 S. E., 67. As there was evidence of at least an unintentional trespass beyond the right of way, a nonsuit as to the entire case was properly refused.

We are unable, however, to agree with the Circuit Judge that there was evidence of a wilful or wanton trespass, and are of the opinion that there should have been a nonsuit as to the cause of action for punitive damages. These facts appear from the evidence on behalf of the plaintiff: L. B. Sloope, the agent of the defendant, who acquired for it the grant from the plaintiff, put a number of men to work cutting out the way for the line. According to the survey the width of the way cut by these men ranged from one hundred to two hundred and seven feet, and was in several places greater than was necessary to protect the defendant's towers and wires from falling timber. But there was no evidence of wilfulness or wantonness on the part of the cutters.

The contention of plaintiff's counsel that like evidence was held sufficient to carry the case to the jury on the issue of wilfulness and wantonness, in *Faris* v. *American Tel. Co.*, 84 S. C., 102, is not well founded. There the trespass was committed when the agent of defendant in charge knew that he had not obtained the requisite signatures to the paper under which the defendant entered; the subordinate agent in charge of the cutting paid no attention to a warning that the company had no right whatever to cut the trees; and no measurement or other precautions were taken, although the special and great value of the trees to the church for shade and beauty as well as association was so evident that the mind even of a careless man could not have failed to advert to the duty to take careful measurements so as to spare all valuable trees not endangering the wires and poles. The facts are very different in this case. Indeed evil intent and wanton disregard of plaintiff's rights were practically disproved by the testimony of Hugh Montgomery, plaintiff's son, who testified that he complained to the men that they were cutting a way unnecessarily wide, that they referred him to Mr. Sloope, the man in charge; that he saw Mr. Sloope and "he got after the hands about it and told them not to cut any more." This evidence leads to the inference of negligence in not providing more careful supervision of the cutters, but it leads away from any inference of intentional or wanton wrong, and shows a purpose to respect and guard the rights of the plaintiff. We think therefore that the Circuit Judge erred in not holding that the defendant could be held liable only for actual damages.

The defendant was not allowed by the Court to elicit from its witness N. B. Cousar his estimate of the number of trees unnecessarily cut in opening the right of way. This evidence was clearly competent and important. The witness did not claim to be specially expert in making such estimates. But he had made an examination and testified that he would know how to make the estimate

about as well as anyone else. In cases like this the quantity of timber destroyed must necessarily be ascertained by estimate, and the estimates of practical men of affairs are admissible. *Virginia-Carolina Chemical Co.* v. *Kirven*, 57 S. C. 445, 35 S. E., 745; *Dent* v. *South Bound Ry. Co.*, 61 S. C. 329, 39 S. E., 527; *Perry* v. *Jefferies*, 61 S. C. 292, 39 S. E., 515; *Wofford* v. *Clinton Cotton Mills*, 72 S. C. 346, 51 S. E., 918.

We think that the judgment of the Circuit Court should be reversed, and the cause remanded to that Court for a new trial, but the Court being equally divided, the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE JONES *concurs.*

MR. JUSTICE HYDRICK, *concurring and dissenting.* I concur in the opinion of Mr. Justice Woods, except upon the two points upon which the conclusion is reached that the judgment of the Circuit Court should be reversed.

There was testimony that the usual width of the right of way required for defendant's purposes was eighty feet, with the right to cut any trees beyond that width tall enough to endanger its wires. L. B. Sloope and J. P. King, agents of defendant, both testified that they instructed the servants of defendant set to cut out the right of way through the plaintiff's land, to clear a way eighty feet wide, and Mr. King said he told them that he would designate the trees beyond the eighty feet which should be cut. When plaintiff's son called the attention of the cutters to the fact that they were cutting beyond the eighty feet, and objected to it, he was told that they were cutting according to the directions of Mr. Sloope, and they continued to cut beyond the eighty feet, notwithstanding his objection until they were afterwards stopped. True, when Mr. Sloope came, and his attention was called to the unnecessary cutting, and objection made, he ordered the cutting to stop, which, as to

that particular matter, leads away from the inference of an intentional disregard of the plaintiff's rights on the part of Mr. Sloope. But the cutters were also the servants of defendant, for whose acts the defendant is liable, and this testimony tends to show that they cut unnecessarily and beyond the eighty feet, after their attention had been called to the fact, and objection made. This testimony was clearly sufficient to warrant a reasonable inference of a reckless disregard by them of the rights of the plaintiff. Moreover, the testimony shows that the cutting through plaintiff's land was continued three or four weeks; and that once a week either Mr. Sloope or Mr. King went there to see after the work and pay off the hands. Now, as the usual right of way cut out was only eighty feet, and as their instructions had been to cut out only eighty feet through plaintiff's lands, and, as the testimony shows that a way averaging one hundred and fifty feet was actually cut out, and in some places as much as two hundred feet, I think the conclusion would not be unreasonable that they (Sloope and King) must have seen and known the extent of the unnecessary cutting, and their failure to stop it evinced that degree of carelessness from which an inference of indifference to the plaintiff's right might reasonably be drawn. I think, therefore, there was no error in refusing to nonsuit plaintiff's demand for punitive damages, and in submitting that issue to the jury.

I agree that the testimony of the witness, Cousar, was competent and should have been admitted. But the defendant practically had the benefit of it; for the witness did testify to the facts from which his opinion as to the extent of the unnecessary cutting was drawn; and, besides, defendant had an abundance of testimony upon the same point from other witnesses. In fact, there was scarcely any difference upon that point between the witnesses for the plaintiff and those for the defendant. I think, therefore, the error was not prejudicial, and is not of sufficient consequence to call for a reversal of the judgment.

For these reasons, I dissent from the judgment of reversal.

MR. JUSTICE GARY *concurs.*

November 29, 1910. PER CURIAM. Upon consideration, the within petition is dismissed and stay of remittitur revoked.